UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL YOPP and
OLA YOPP-BARBER,

                Plaintiffs,                            Case No. 10-10118

v.                                          Paul D. Borman
                                          United States District Judge

UNITED STATES DEPARTMENT
OF JUSTICE DRUG ENFORCEMENT
ADMINISTRATION, MICHAEL JENEARY,
MIKE CONNOLLY, and UNITED STATES
OF AMERICA,

                Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (DKT. NO. 7) AND (2) DISMISSING THE CASE WITH PREJUDICE

        This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for

Summary Judgment. (Dkt. No. 7.) Plaintiffs filed a Response (Dkt. No. 9) and Defendants filed a

Reply (Dkt. No. 13.) The Court held a hearing on July 15, 2010.[1] For the reasons that follow,

Defendants' motion is GRANTED and the case is DISMISSED with prejudice.

## I.     BACKGROUND

        On June 13, 2008, Magistrate Judge Virginia Morgan issued a search warrant for the

_____

[1] Plaintiffs' counsel never appeared for the hearing and never attempted to contact the Court, despite messages left by the Court with counsel's secretary. The Court placed several calls to counsel for Plaintiffs, and delayed the hearing approximately 25 minutes, before proceeding to hear oral argument.

residence at 18124 Dequindre, Detroit, Michigan. (Defs.'s Mot. Ex. 1.)[2] Defendant Jeneary, a

Special Agent for the United States Drug Enforcement Administration, was the affiant for the search

warrant. (Declaration of Michael T. Jeneary, ¶¶ 1, 4, March 30, 2010, Defs.'s Mot. Ex. 3.) Based

upon Agent Jeneary's investigation of a target named Zwati Davis, and based upon information

intercepted on Mr. Davis' telephone conversations, surveillance of his activities and information in

government databases, Agent Jeneary had probable cause to believe that Mr. Davis was storing

drugs and/or the proceeds of drug trafficking at the 18124 Dequindre address. (*Id.* ¶ 3.) Agent

Jeneary states in his affidavit offered in support of Defendants' motion that none of the information

contained in his sworn affidavit in support of the warrant was untruthful or factually incorrect. (*Id.*

¶ 4.)

The Magistrate Judge reviewed the affidavit sworn by Agent Jeneary and issued the warrant,

which contained a description of the property to be searched and an attachment describing the

---

[2]  Plaintiffs do not attach a copy of the warrant to the Complaint but refer to the warrant in their
Complaint. The Court may consider the warrant for purposes of Defendants' motion to dismiss,
although it is not formally attached to the Complaint, because it is referred to in the Complaint and
is central to Plaintiffs' claims. *See Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th
Cir. 1999). *See also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that "if
the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce
the pertinent exhibit" which becomes a part of the pleadings).

Because Defendants move to dismiss or alternatively for summary judgment, the Court can
analyze some claims without reference to the supporting Declarations filed by Defendants.
However, Plaintiffs' Complaint provides scarce factual content and often does not attribute the
allegedly unlawful conduct to any particular Defendant, referring to "Defendants" collectively.
Furthermore, Plaintiffs have not provided any evidence by way of affidavit or otherwise in response
to Defendants' motion. In fact, Plaintiffs' response to Defendants' motion lacks any substance at
all, factual or legal, and states simply that Plaintiffs rely solely on the pleadings and allegations
contained in the Complaint. As discussed *infra*, Plaintiffs' have utterly failed to meet their
obligations to respond under Federal Rule of Civil Procedure 56(e)(2). The Court takes many facts
from the Declarations filed in support of Defendants' motion for summary judgment in setting forth
the background of Plaintiffs' claims.

evidence to be searched for and seized. (*Id*; Defs.'s Mot. Ex. 1.) The search warrant authorized search for and seizure of documents, paperwork, records and other items related to the possession, purchase, distribution and transportation of controlled substances. (Defs.'s Mot. Ex. 1 at 3.) The Affidavit offered in support of the search warrant was filed under seal and remains under seal because of an ongoing criminal investigation. (Jeneary Decl. ¶ 4, Defs.'s Mot. Ex. 3.)

The search warrant was executed on June 17, 2008. (Defs.'s Mot. Ex. 1, at 2.) Agent Jeneary was not present and did not participate in the execution of the search warrant on June 17, 2008 and has no personal knowledge of the events that transpired at the Dequindre residence when the warrant was executed. (Jeneary Decl. ¶ 5.) Entry into the Dequindre residence was handled by the Oakland County Sheriff's Department Special Response Team ("SRT"). (Defs.'s Mot. Ex. 4, Declaration of Michael D. Connolly, March 30, 2010, ¶ 4; Defs.'s Mot. at 1.) Task Force Officer ("TFO") Michael Connolly with the United States Department of Justice, DEA participated in execution of the warrant and was approximately one block away surveilling the situation when the SRT gained entry into the Dequindre residence by conducting a knock and announce and firing breaching shots to open the door. (Connolly Decl. ¶ 4.) TFO Connolly was not involved in obtaining the search warrant and participated in execution of the warrant on the understanding that the warrant was issued upon probable cause. (*Id*. ¶ 3.)

Once the SRT obtained entry and the scene was secure, TFO Connolly entered the residence at 18124 Dequindre. (*Id*. ¶ 5.) The only individual present other than the members of the SRT was Plaintiff Michael Yopp who had already been handcuffed. (*Id*.) TFO Connolly instructed that the handcuffs be removed and Mr. Yopp was cooperative and did not complain of any injury. (*Id*.) TFO Connolly explained to Mr. Yopp that they were there to execute a federal search warrant and

that the target of the warrant was Mr. Yopp's nephew, Zwati Davis.  (*Id*. ¶ 6.)  The search took less than an hour, officers seized miscellaneous documents addressed to 18124 Dequindre and TFO Connolly left a copy of the search warrant with Mr. Yopp when the officers left.  (*Id*; Defs.'s Mot. Ex. 1 at 4.)  TFO Connolly testified that Ola Yopp-Barber was not present at the time of the entry or at any time during the search of the residence.  (*Id*.)  Plaintiffs claim that they sustained property damage and loss, pain and suffering, permanent physical, mental and physiological [sic] injury as a direct result of Defendants' conduct."  (Compl. ¶ 31.)

On December 12, 2008, Plaintiffs filed an administrative tort claim against the DEA under the Federal Tort Claims Act, 28 U.S.C. §§ 2672, 2675(a), asserting that Agent Jeneary and TFO Connolly used improper facts to obtain a search warrant for the Dequindre residence, that they discharged firearms to gain entry and that upon entry they physically assaulted Michael Yopp and used force to obtain information about a third party, causing physical injury, property damage and mental damage.  (Defs.'s Mot. Ex. 5.)  On September 30, 2009, the DEA denied Plaintiffs' claim. (Defs.'s Mot. Ex. 6.)

Plaintiffs filed their Complaint on January 12, 2010, against the DEA, Agent Jeneary and TFO Connolly.[3]  Plaintiffs allege that Defendants entered Plaintiffs' home at 18124 Dequindre with a search warrant that was not based on probable cause for the purpose of harassing and threatening

---

[3]  On April 1, 2010, this Court entered an Order Reflecting Substitution of the United States of America as the Defendant in Counts I, III, IV and VI-IX of the Complaint pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679(b)(1) and § 2679(d)(1), dismissing all state law claims against Defendants Jeneary and Connolly on the grounds that the exclusive remedy for the claims stated in these counts is an action against the United States, who was substituted as a party on those counts.  (Dkt. No. 6.)  Plaintiffs concede in their Response to Defendants' motion that the DEA is not a proper party and agree to dismiss the DEA from the case.  (Pls.'s Resp. 2.)  Accordingly, the Court, by this Order, also dismisses the DEA from the action with prejudice.

the Plaintiffs to extract information on the whereabouts of their relative, Zwati Davis. (Compl. ¶ 6.) Plaintiffs further allege that Zwati Davis was not a resident and was not a frequent visitor. (Compl. ¶ 8.) Plaintiffs allege that "Defendants gave knowingly false statements to secure a search warrant of the Plaintiff's home [and] . . . that said search warrant was never presented to Plaintiff Michael Yopp upon entry." (Compl. ¶¶ 10-11.) Plaintiffs allege in their Complaint that "Defendants Michael Jeneary and Mike Connolly failed to knock and announce and discharged their firearms into the bolt lock of the house to gain entry . . . causing injury to Plaintiff's right hand." (Compl. ¶¶ 11-12.) Plaintiffs allege in the Complaint that "Defendants Michael Jeneary and Mike Connolly . . . assaulted Plaintiff and accused him of being a suspect . . . [and] did not mirandize Plaintiff Michael Yopp before questioning and arresting him." (Compl. ¶¶ 14, 15.) Plaintiffs also allege that "Defendants aggressively forced Plaintiff Michael Yopp to lay down and tied his hands with rubber shackles causing permanent numbness in Plaintiffs finders [sic]." (Compl. ¶ 17.) Plaintiffs make further allegations regarding "Defendants" practices, policies and customs, without distinguishing which Defendants or which policies, customs and practices. (Compl. ¶¶ 19, 25, 26, 29.)

In their reply to Defendants' motion to dismiss, Plaintiffs suggest that they should be allowed to amend their complaint, although they do not specify how they propose amending their complaint or how such an amendment would serve as an answer to Defendants' motion. In any event, Magistrate Judge Komives issued an Order on June 21, 2010 denying Plaintiffs' motion to amend the Complaint to which Plaintiffs did not file objections. (Dkt. No. 15.)

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6) - Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555 (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

## B.      Federal Rule of Civil Procedure 56 - Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**III. ANALYSIS**

**A. The *Bivens* Claims Against Agent Jeneary and TFO Connolly (Counts II, V and X) Should Be Dismissed Based Upon Qualified Immunity[4]**

**1. The qualified immunity framework.**

In Counts II, V and X, Plaintiffs' Complaint appears to assert claims against Defendants Jeneary and Connolly under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for alleged violations of the Fourth, Fifth and Fourteenth Amendments.[5]  In their motion, Defendants Jeneary and Connolly assert the defense of qualified immunity as to each *Bivens* claim.

"When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).  "Through the use of qualified immunity, the law shields 'governmental officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Id.* (citing *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir.2004) quoting *Anderson*

---

[4] Defendants argue that these claims are barred by qualified immunity under either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56.  Because Defendants have attached affidavits to support their motion, and because Plaintiffs recognized, and indeed recited in their response, the standards for deciding a motion for summary judgment, the Court treats the motion largely as one for summary judgment and considers the unrebutted affidavit testimony.  However, some claims, as discussed *infra*, fail to state a claim and are dismissed under Fed. R. Civ. P. 12(b)(6).

[5] Plaintiffs Complaint does not identify which specific allegedly unlawful acts fall under which of these Counts, nor does it identify which Constitutional provisions allegedly have been violated.  It simply refers to "Count Two: Civil Rights: Unlawful Search and Seizure;" "Count Five - Civil Rights: Excessive Force;" and "Count X: Civil Rights: Unlawful Arrest and Detention."  Each Count then just incorporates all preceding paragraphs and claims generally deprivation of "constitutional rights."  The Court will adopt Defendant's parsing of the Complaint for purposes of this motion.

*v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).   In analyzing claims of

qualified immunity, the courts have employed a two-part, sequential test inquiring: "'(1) whether,

considering the allegations in a light most favorable to the party injured, a constitutional right has

been violated, and (2) whether that right was clearly established.'" *Armstrong v. City of Melvindale*,

432 F.3d 695, 699 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11

(6th Cir. 2005) citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   Following the Supreme Court's

decision in *Pearson v. Callahan*, 129 S.Ct. 808 (2009), courts now have discretion in deciding the

appropriate sequencing of the *Katz* two-tier inquiry.   *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th

Cir. 2009) (discussing *Pearson* and stating that the court is now "free to consider those questions

in whatever order is appropriate in light of the issues before [it], such that [it] need not decide

whether a constitutional violation has occurred if [it] finds that the officer's actions were

nevertheless reasonable.") (internal quotation marks and citation omitted).

> Courts are urged to decide issues of qualified immunity as early as possible in proceedings:

> Because qualified immunity is an immunity from suit rather than a mere defense to
> liability . . . it is effectively lost if a case is erroneously permitted to go to trial.
> Indeed, we have made clear that the 'driving force' behind creation of the qualified
> immunity doctrine was a desire to ensure that 'insubstantial claims' against
> government officials [will] be resolved prior to discovery.   Accordingly, we
> repeatedly have stressed the importance of resolving immunity questions at the
> earliest possible stage in litigation.

*Pearson, supra* 129 S.Ct. at 815 (internal citations and quotation marks omitted).   "[A] qualified

immunity defense can be raised at various stages of the litigation including at the pleading stage in

a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense

at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).   When the Defendant moves for

summary judgment, attaching supporting affidavits, the plaintiff may not rely on his pleadings but

must offer evidence of objectively unreasonable conduct in light of clearly established law:

> The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each of the individual defendant[s] must be evaluated. At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights.

*Green v. Tudor*, 685 F. Supp. 2d 678, 700 n. 14 (W.D. Mich. 2010) (internal citations and quotation marks omitted). The Supreme Court has steadfastly encouraged resolution of qualified immunity issues before extended discovery whenever possible: "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> **2.    Plaintiffs have failed to establish the violation of a constitutional right based upon a Fourth Amendment claim that there was a lack of probable cause to issue the warrant.**

There is no question in this case that the search was conducted pursuant to a warrant issued by a magistrate judge, and that officers conducting a search are entitled to rely on a facially valid warrant issued on a finding of probable cause by a magistrate. "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *U.S. v.* Leon, 468 U.S. 897, 922 (1984). Although a search may be conducted pursuant to a warrant issued by a magistrate judge, its validity may be challenged if the affidavit in support of the warrant included false statements or material omissions that were made intentionally or recklessly. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A plaintiff attacking the validity of a warrant based upon the insufficiency of the supporting affidavit must

allege more than mere conclusions and must include "allegations of deliberate falsehood or of reckless disregard for the truth" and "point out specifically the portion of the warrant affidavit that is claimed to be false." *Id.* at 171. *See also Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) and *al Kidd v. Ashcroft*, 580 F.3d 949, 973-974 (9th Cir. 2009) (both applying *Franks* in the context of a *Bivens* claim).

a. **Plaintiffs' claims that Defendants lacked probable cause to issue the warrant fail to meet the pleading standards of *Iqbal* and *Twombly*.**

Plaintiffs claim that the search warrant executed at the Yopp residence was not based on probable cause, and that the search warrant affidavit, which supported issuance of the warrant and remains under seal, contained knowingly false statements. (Compl. ¶¶ 6, 9, 10.) Putting aside for a moment the unrebutted testimony of Agent Jeneary that all statements contained in the warrant affidavit were truthful, the Complaint fails on its face to satisfy the pleading standards established in *Iqbal* and *Twombly* that are necessary to state a Fourth Amendment claim. The Complaint gives no indication of the substance of the alleged false statements and Plaintiffs' response to Defendants' motion does nothing to enhance the factual content on the issue of the claimed lack of probable cause. In their response, Plaintiffs merely quote the legal principles governing claims of qualified immunity and "contend that they allege [in their Complaint] sufficient facts to give notice of the allegations and potential claims." (Pls.'s Resp. 3.) Plaintiffs' response does not even mention probable cause or the allegedly false statements. Plaintiffs' Complaint merely states the legal conclusion that Defendants "lacked probable cause" and gave "false statements" in support of the warrant affidavit. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, *supra* 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. Plaintiffs' allegations do not "nudge" their claims across the line from possibility to plausibility. Plaintiffs' Complaint fails to state a claim based upon insufficiency of the warrant or lack of probable cause to issue the warrant.

      **b.**    **Plaintiffs' have failed to establish a genuine issue of material fact on their claim that Defendants lacked probable cause to issue the warrant.**

Even were the Court to conclude that Plaintiffs' *Bivens* claims based on lack of probable cause and insufficiency of the warrant survived the pleading requirements of *Twombly* and *Iqbal*, the Court concludes that Agent Jeneary and TFO Connolly are entitled to summary judgment on their qualified immunity claim. Defendants have supported their motion for summary judgment with the Declarations of Agent Jeneary and TFO Connolly which establish that TFO Connolly was not the affiant on the search warrant (although this is clear as well from the face of the document) and that Agent Jeneary's warrant affidavit was truthful and factually correct. (Defs.'s Mot. Ex. 3, Jeneary Decl. ¶ 3-4; Defs.'s Mot. Ex. 4, Connolly Decl. ¶ 3.) Plaintiffs have failed to meet their obligation under Federal Rule of Civil Procedure 56(e)(2) to respond to Defendants' motion, by affidavit or otherwise, setting out specific facts showing a genuine issue of fact:

> *Opposing Party's Obligation to Respond.* When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). Plaintiffs have provided nothing by way of response to Defendants' motion other than the statement that Plaintiffs rely on the allegations set forth in their Complaint. Nor did Plaintiffs, or Plaintiffs' counsel, appear at the hearing to offer evidence in support of their

allegations. While Plaintiffs make vague promises in their response that discovery will substantiate their claims, this does not suffice in response to Defendants' well-supported motion. Plaintiffs have made no attempt to unseal the warrant or to attack its validity with any specificity. Plaintiffs were obligated to respond with specific facts, by way of affidavit or other sworn testimony. If Plaintiffs were for some reason unable to obtain the necessary facts essential to their response, Federal Rule of Civil Procedure 56(f) provides a mechanism for relief by way of a motion for an order of continuance or to permit certain discovery to be undertaken. Plaintiffs have not so moved this Court by way of affidavit pursuant to Fed. R. Civ. P. 56(f).

Plaintiffs do not even address the argument made by Defendants that the Magistrate Judge's determination of probable cause, which was based on the affidavit offered in support of the warrant, is entitled to "great deference" and is conclusive unless demonstrated to have been unsupported by substantial evidence. Plaintiffs have not provided any factual content on which the Court could base a conclusion that the Magistrate Judge's determination lacked a substantial basis. As Defendants point out, the warrant affidavit remains under seal and therefore the Plaintiffs' allegation that it contains false statements is necessarily based on pure speculation. Plaintiffs have made no attempt to unseal the warrant affidavit or to have this Court conduct an *in camera* review of the warrant affidavit. "When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore, supra* 476 F.3d at 403. Plaintiffs here may not merely rest on the conclusory allegations of their Complaint in response to Defendants' assertion of qualified immunity but must demonstrate a lack of entitlement. Plaintiffs have not carried this burden and Defendants Jeneary and Connolly. Viewing the facts in the light most favorable to Plaintiffs, Defendants are entitled to qualified immunity on Plaintiffs'

claims based upon the insufficiency of the underlying warrant affidavit and lack of probable cause.

### 3. Plaintiffs have failed to establish a genuine issue of material fact as to any claimed violation of constitutional rights based on events surrounding the execution of the warrant.

Plaintiffs claim that Defendants Jeneary and Connolly "failed to knock and announce and discharged their firearms into the bolt lock of the house to gain entry," causing injury to Plaintiff Michael Yopp's hand. (Compl. ¶¶ 12, 13.) The Fourth Amendment requires that in general police officers attempting to execute a warrant knock and announce their identities before attempting forcible entry. *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *Ingram v. City of Columbus*, 185 F.3d 579, 588 (6th Cir. 1999). However, the Declarations of Jeneary and Connolly establish that neither was present when the SRT team (of Oakland county sheriffs, not DEA officers) gained entry into the home. Jeneary was not involved at all in the execution of the warrant and Connolly was a block away, observing, when the SRT knocked, announced and fired breaching shots. (Defs.'s Mot. Ex. 3, Jeneary Decl. ¶ 5; Ex. 4, Connolly Decl. ¶ 4.) Plaintiffs have failed to rebut this evidence and failed to provide any factual support for their claim that either Defendant Jeneary or Connolly was involved in gaining entry into the home. Defendants Jeneary and Connolly are entitled to qualified immunity on Plaintiffs' claim that their failure to knock and announce violated Plaintiffs' Fourth Amendment rights.

Plaintiffs also claim that "Defendants [not specifying which Defendants] aggressively forced Plaintiff Michael Yopp to lay down and tied his hands with rubber shackles causing permanent numbness in Plaintiffs finders [sic]." (Compl. ¶ 17.) Again, the unrebutted Declarations of Jeneary and Connolly establish that Jeneary was not even present for the execution of the warrant and Connolly testified that he entered the home after the SRT team had gained entry, and that Mr. Yopp

was already handcuffed and Connolly instructed that the handcuffs be removed.  (Defs.'s Mot. Ex. 4, Connolly Decl. ¶ 5.)  Plaintiffs have failed to rebut this evidence and do not specifically claim otherwise in the Complaint.  Defendants Jeneary and Connolly are entitled to qualified immunity on Plaintiffs' excessive force claim.[6]

Plaintiffs also claim that Defendants never presented the search warrant to Plaintiff Michael Yopp upon entry into the residence.  (Compl. ¶ 11.)  However, it is well established that "'neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search.'"  *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 442 (6th Cir. 2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 561 n. 5 (2004)).  TFO Connolly states in his unrebutted Declaration that he did leave a copy of the warrant with Plaintiff Michael Yopp when officers left the residence following the search, which lasted approximately one hour.  (Defs.'s Mot. Ex. 4, Connolly Decl. ¶ 6.)  Defendants Jeneary and Connolly are entitled to qualified immunity on this claim.

Plaintiff Michael Yopp appears to claim that he was falsely arrested.  (Compl. ¶ 15.) However, he offers no evidence in support of the claim that he was arrested and in fact Plaintiff Michael Yopp was not arrested but was detained pursuant to the execution of a valid search warrant, a legal basis for detention.  "An officer's authority to detain incident to a search is categorical; it

---

[6]  The Court notes that even had TFO Connolly been involved in handcuffing Plaintiff Michael Yopp, officers executing a search warrant may detain the occupants and may use handcuffs to do so.  *See Muehler v. Mena,* 544 U.S. 93, 98-99 (2005) (finding that the officers' use of handcuffs to detain occupants of the premises during the search was reasonable).  Plaintiffs offer no factual support for their claim that the use of the handcuffs was unreasonable under the circumstances and furthermore do not contest the fact that TFO Connolly's statement that he did not apply the handcuffs and in fact ordered them removed upon entering the home.

does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.' Thus, Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." *Muehler, supra* 544 U.S. at 98 (quoting *Michigan v. Summers*, 452 U.S. 692, 705 n. 19 (1981)). Plaintiffs offer no evidence and no authority to support a contention that the detention was unreasonable. Defendants are entitled to qualified immunity on this claim.[7]

Finally, Plaintiffs claim in conclusory terms that "Defendants ... caus[ed] a disturbance and property damage." (Compl. ¶ 16.) The Complaint does not describe the damage, nor does it identify which Defendant allegedly caused the damage. Defendants assert that a certain amount of property damage is expected in the course of a search. "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). "*De minimis* damage cannot form the basis of a constitutional violation." *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009). Because Plaintiffs do not even attempt to describe the damage, indeed do not even address the property damage in their responsive brief, Plaintiffs cannot

---

[7] Plaintiffs also claim, apparently relying on the Fifth Amendment, that Michael Yopp was not given *Miranda* warnings before he was arrested. (Compl. ¶ 15.) However, as discussed above, Plaintiff was never arrested and does not claim that he was ever interrogated. Officers are not required to give *Miranda* warnings to individuals who are not in custody. *See Casnave v. Lavigne*, 169 F. App'x 435, 439 (6th Cir. 2006). Moreover, the "the failure to give Miranda warnings does not create liability under § 1983 [or *Bivens*]." *See Neighbor v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (explaining that "Miranda warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a Miranda violation is the exclusion from evidence of any ensuing self-incriminating statements."). No such statements are alleged to have been made here.

meet their burden of overcoming Defendants' assertion of the defense of qualified immunity. Even assuming that some damage was done, Plaintiffs cannot just rest on this conclusory allegation but must establish some genuine issue of fact that the claimed damage was significant enough to amount to a constitutional violation. These are facts that clearly were within Plaintiff Michael Yopp's knowledge, as he was a percipient witness during the search yet Plaintiffs provide no evidence,by way of affidavit or otherwise, to support this claim. Plaintiffs have failed raise a genuine issue of material fact on this issue and Defendants are entitled to qualified immunity on Plaintiffs' claim relating to a constitutional violation based upon alleged damage to their property.[8]

Plaintiffs have failed to carry their burden of establishing that Defendants Jeneary and Connolly are not entitled to the defense of qualified immunity on each of Plaintiffs' *Bivens* claims. In response to Defendants' motion to dismiss or in the alternative for summary judgment, Plaintiffs do not identify any legal precedent whatsoever that would establish the unconstitutionality of Jeneary and Connolly's behavior. Moreover, Plaintiffs offer no factual support to enhance the threadbare, conclusory allegations of their Complaint and specifically offer no evidence, by way of affidavit or otherwise, to rebut the well-supported motion submitted by Defendants. The Court finds, viewing the evidence in the light most favorable to the Plaintiffs, that Defendants Jeneary and Connolly are entitled to qualified immunity on each of Plaintiffs' *Bivens* claims and dismisses Counts II, V, and X of Plaintiffs' Complaint.

**B.      Plaintiffs' State Law Claims Against the United States**

---

[8] The Court notes that dismissal of Plaintiffs' constitutional claim based upon property damage is conclusive as to all of Plaintiff Ola-Yopp Barber's *Bivens* claims, as Plaintiffs concede in their responsive brief that "the injury suffered by the Plaintiff, Ola Yopp-Barber was the damages [sic] done to her property." (Pls.'s Resp. 7.)

Plaintiffs' Complaint raises several state law claims against the United States which Defendants claim either fail to state a claim or fail to create a genuine issue of material fact. Pursuant to the Federal Tort Claims Act, this Court has dismissed the state law claims against the individual Defendants and substituted the United States as a party. (Dkt. No. 6.) In determining the liability of the United States under the Federal Tort Claims Act, courts apply the substantive law of the state where the acts occurred. 28 U.S.C. § 1346(b).

## 1. Assault and Battery (Counts III and VIII)

Under Michigan law, an assault is an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *See People v. Terry*, 217 Mich. App. 660, 662 (1996). "A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v. Reeves*, 458 Mich. 236, 240 n. 4 (1998). Plaintiff Ola-Yopp Barber concedes her claim for assault and battery, admitting that her damages were only to property. As to Plaintiff Michael Yopp, as discussed above, all of the alleged conduct that would presumably constitute assault and battery was committed by members of the SRT team and not by either Defendant Jeneary or Connolly. There is no genuine issue of material fact as to Plaintiffs' claims for assault and battery and Defendants are entitled to summary judgment on Counts III and VIII.

## 2. Intentional (Count VI) and Negligent (Count VII) Infliction of Emotional Distress

In order to establish a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous conduct on the part of the defendant; (2) that defendant acted with intent or recklessness; (3) that the defendant's conduct caused the plaintiff's damages; and (4) that plaintiff has suffered severe emotional distress. *Hayley v. Allstate Ins. Co*., 262 Mich. App. 571,

577 (2004). Again, as to Plaintiff Ola Yopp-Barber, she concedes that her only damages are to property. In any event, the facts alleged in the Complaint do not rise to the level of extreme and outrageous conduct required to establish this tort and the unrebutted Declarations of Agent Jeneary and TFP Connolly establish that neither one of them was present when the allegedly outrageous conduct occurred. Count VI should be dismissed.

Negligent infliction of emotional distress is a bystander tort requiring proof that a third party observed serious injury to a family member of such a nature to cause severe mental distress to the plaintiff and the claimed shock must be contemporaneous with the accident. *Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 81 (1986). Plaintiffs' Complaint fails to state a claim for negligent infliction of emotional distress because Plaintiffs concede that Ola Yopp-Barber suffered no personal injury damage and therefore Michael Yopp could not possibly allege such a bystander claim. Count VIII should be dismissed.[9]

### 3. Violation of the Michigan Constitution (Count IX)

No damage remedy is available under the Michigan Constitution where a plaintiff has other remedies available. *Jones v. Powell*, 462 Mich. 329, 336 (2000) (holding that there was no basis to infer a remedy under the State Constitution where plaintiff could and did bring suit for assault, battery, false arrest and imprisonment, intentional infliction of emotional distress and violation of civil rights). *See also HRSS, Inc. v. Wayne County Treasurer*, 279 F. Supp. 2d 846, 851 (E.D. Mich.

---

[9] As to Counts I and IV, these claims are subsumed by Plaintiffs' intentional tort claims of assault and battery and should be dismissed. *See Smith v. Stolberg*, 231 Mich. App. 256, 258-259 (1998) (holding that plaintiffs proper cause of action for allegations of an offensive intentional touching is for the tort of battery, not negligence). Plaintiffs do not even attempt to allege the elements of the tort of negligence, and do not even speak in terms of "duty." Counts I and IV are therefore dismissed.

2003) (citing *Jones* and holding that plaintiffs' claims under the Michigan Constitution were barred by the availability of other remedies, namely plaintiffs' section 1983 claim). Count IX should be dismissed for failure to state a claim.

## IV.      CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. No. 7) and DISMISSES Plaintiffs' Complaint with prejudice.

IT IS SO ORDERED.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 19, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 19, 2010.


S/Denise Goodine
Case Manager